Filed 5/21/14  De la Cerra v. Coastline Commercial Capital CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FRED M. de la CERRA et al.,<br><br>   Plaintiff and Appellant,<br><br>   v.<br><br>COASTLINE COMMERCIAL CAPITAL, INC., et al.,<br><br>   Defendants and Respondents. | B247657; B250780<br><br>(Los Angeles County<br>Super. Ct. No. BC381249, BC489490)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING (NO CHANGE IN JUDGMENT) |

THE COURT:

It is ordered that the opinion filed herein on April 21, 2014 be modified as follows:

1.     On page 4, delete the entire second paragraph beginning with "In their operative third amended complaint."  Replace the paragraph with the paragraph below. Add as footnote 2 the following footnote, which will require renumbering of subsequent footnotes, so that the paragraph reads:

In their operative third amended complaint, the de la Cerra parties sought to quiet title to the York Boulevard property based on the 1998 quitclaim deed. Alternatively, they sought declaratory relief concerning their security interests under the two deeds of trust.  In addition, the de la Cerra parties sought damages for fraud and conspiracy to defraud, breach of contract (against Molina only),

unfair or unlawful trade practices (Bus. & Prof. Code, § 17200) and elder abuse (Welf. & Inst. Code, § 15600 et seq.).[2]

_____

[2] Although the third amended complaint also purported to allege claims for forgery, negligence and intentional infliction of emotional distress, those causes of action, also alleged in the second amended complaint, were dismissed in September 2008 after the trial court sustained in part the Coastline defendants' demurrer to the second amended complaint without leave to amend.

2.      On page 9, in the first full paragraph (section 1., f), the sentence "The Coastline defendants, Kawasawa, Merchants Bonding Company and Moreno appeared at the hearing but did not present any evidence" is deleted so that the paragraph reads:

> f. *The court trial on the breach of contract claim against Molina*
>
> The de la Cerra parties' cause of action for breach of contract was scheduled for a jury trial on March 20, 2013. Molina did not appear. Accordingly, the de la Cerra parties withdrew their request for a jury trial and conducted a prove-up hearing to the court. The court found Molina liable to the de la Cerra parties in the amount of $508,873.97 for her breach of the loan agreement.[9] The court rejected the de la Cerra parties' request to include in that judgment a declaration that the amount owed was secured by the 1996 deed of trust on the property. The de la Cerra parties have separately appealed from that judgment.
>
> _____
>
> [9] Later, the court awarded the de la Cerra parties $27,155.05 in costs and $145,834.66 in attorney fees plus interest.

3.      On page 14, the original footnote 14 is deleted, which will require the renumbering of subsequent footnotes.

4.      On page 14, in the second sentence of the first full paragraph following "revives the de la Cerra parties' damage claims against the Coastline defendants, Kawasawa, Merchants Bonding Company and Moreno" insert "as well as the Coastline defendants' cross-claims" so that the sentence now reads:

> Our reversal of the summary judgment and the order of nonsuit that relied on it revives the de la Cerra parties' damage claims against the Coastline defendants, Kawasawa, Merchants Bonding Company and Moreno, as well as the Coastline defendants' cross-claims, since all those claims, premised on the allegedly fraudulent reconveyance, were dismissed solely on the basis of the trial court's

2

premature, and ultimately erroneous, finding Molina had fully performed under her loan agreement.

5. On page 16, in the first sentence of the paragraph beginning with the word "Emphasizing," after "unrecorded 1996 lien" add as footnote 16 the following footnote, which will require renumbering of subsequent footnotes:

[16] The recording of the August 2007 deed of full reconveyance—challenged in this lawsuit as fraudulent—superseded the recorded 1996 deed of trust, leaving the 1996 lien, to the extent it still existed, "unrecorded."

6. On page 24, replace the third sentence of the disposition beginning with "The de la Cerra parties may pursue" with the following:

The de la Cerra parties may pursue their fraud and surviving tort claims against the Coastline defendants, Kawasawa, Merchants Bonding Company and Moreno and against any other defendant named in the third amended complaint who remains in the lawsuit, and the Coastline defendants may pursue their cross-claims, subject to any defenses any party may have unrelated to the scope and effect of our remittitur in *de la Cerra I.*

There is no change in the judgment. The petitions for rehearing are denied.

_____

PERLUSS, P. J.                WOODS, J.                SEGAL, J.[*]

_____

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

3

Filed 4/21/14 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| FRED M. de la CERRA et al., | B247657; B250780 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC381249, BC489490) |
| v. | |
| COASTLINE COMMERCIAL CAPITAL, INC., et al., | |
| Defendants and Respondents. | |

APPEALS from orders of dismissal and a judgment, Michael L. Stern, Judge. The February 26, 2013 order of dismissal and March 20, 2013 order of dismissal in L.A.S.C. Case No. BC381249 are reversed and remanded with directions. The February 26, 2013 order of dismissal in L.A.S.C. Case No. BC489490 is affirmed. The June 9, 2013 judgment after court trial in LA.S.C. Case No. BC381249 is affirmed.

The Clark Law Firm, David R. Clark; Law Offices of Manuel de la Cerra and Manuel de la Cerra for Plaintiffs and Appellants Fred M. de la Cerra, Elia de la Cerra, the de la Cerra 1997 Family Trust dated January 17, 1997 and the Elia de la Cerra Living Trust Dated May 10, 2005.

Cunningham & Treadwell, James H. Treadwell, Steven F. Kuehl for Defendants and Respondents, Coastline Commercial Capital Inc., First American Title Insurance Company, North American Title Company, Karla Severance and Mike Targon;

Margery Q. Lee and William S. Fiske for Defendants and Respondents, North American Title Company and Karla Severance.

California Lawyers Group, Inc. and Mitra Chegini for Defendant and Respondent Ruben Moreno.

The Ryan Law Firm and Kelly F. Ryan for Defendants and Respondents Adam Kawasawa and Merchants Bonding Company.

_____

Fred M. de la Cerra, his wife, Elia de la Cerra, and two related entities, the de la Cerra 1997 Family Trust dated January 17, 1997 and the Elia de la Cerra Living Trust dated May 10, 2005 (collectively the de la Cerra parties), appeal from the orders of dismissal entered after the trial court granted summary judgment in favor of Coastline Commercial Capital Inc., First American Title Insurance Company, North American Title Company and Karla Severance (collectively the Coastline defendants) and then, based on the effect of that ruling, granted a nonsuit in favor of Adam Kawasawa, Merchants Bonding Company and Ruben Moreno (L.A.S.C. No. BC381249). The de la Cerra parties also appeal from a February 26, 2013 order of dismissal entered in a separate action they had filed against First American Title Insurance Company and Mike Targon for conversion, unjust enrichment and related torts (L.A.S.C. No. BC489490) after the trial court sustained Targon's and First American's demurrer to that action without leave to amend. Finally, the de la Cerra parties appeal from the June 19, 2013 judgment they obtained against Maria Molina following a court trial in Los Angeles Superior Court No. BC381249.

We reverse the orders of dismissal following the summary judgment and the nonsuit because they are based on a misconstruction of our decision in *de la Cerra v. Molina* (Dec. 14, 2011, B231088) [nonpub. opn.] (*de la Cerra I*). We affirm the order of dismissal in Los Angeles Superior Court No. BC489490 and affirm the judgment following a court trial in Los Angeles Superior Court No. BC381249.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Quiet Title/Fraud Lawsuit*

    a. *The complaint*

In November 2007 the de la Cerra parties sued Molina, the Coastline defendants, Merchants Bonding Company, Kawasawa and Moreno to quiet title to real property located at 5125 York Boulevard in Los Angeles. The complaint also sought declaratory relief as to the de la Cerra parties' rights and duties in connection with the property, as well as damages based on the alleged fraudulent reconveyance of at least two deeds of trust they held as security for loans they purportedly made to Molina.

The operative third amended complaint, filed in March 2009, alleged the de la Cerras sold the York Boulevard property in August 1996 to Guillermo Cervantes and his wife, Gloria Yamileth Carias, for $320,000. To effect the sale, the de la Cerras loaned Cervantes and Carias $283,500, secured by a deed of trust on the property (the 1996 deed of trust), which the de la Cerras promptly recorded. In May 1997 Cervantes and Carias sold and quitclaimed the property to Molina and her husband. The sale agreement provided the Molinas would take the property subject to the de la Cerras' existing loan and their 1996 deed of trust, an arrangement also agreed to by the de la Cerras. According to the complaint, Molina ceased making payments to the de la Cerras and quitclaimed the property back to them in December 1998, but the de la Cerras inadvertently failed to record the quitclaim deed. They did not realize the 1998 quitclaim deed had not been recorded until 2003 when they attempted to use the York Boulevard property as collateral in a separate transaction.

Unable to locate the 1998 quitclaim deed to record it, in 2003 Fred de la Cerra initially asked Molina to sign a new quitclaim deed, which she agreed to do, but that transfer could not be completed because Molina's estranged husband, also a record owner, could not be located to sign the quitclaim deed. To protect his interest in the York Boulevard property, Fred de la Cerra then asked Molina to sign a promissory note purporting to loan her $250,000, secured by a deed of trust on the York Boulevard property (the 2003 deed of trust). Molina complied with this request and executed the

3

2003 note and the accompanying deed of trust, which Fred de la Cerra duly recorded. The loan itself, Fred de la Cerra acknowledged, was never funded. (See *de la Cerra I,* at [p. 6].)

In August 2007 Molina approached Moreno, a mortgage broker, about obtaining a loan secured by the York Boulevard property. At the time, due to Fred de la Cerra's failure to record the 1998 quitclaim deed, Molina remained the record owner of the property subject to the de la Cerra parties' recorded 1996 and 2003 deeds of trust. According to the de la Cerra parties, Kawasawa, a notary, and Moreno, together with the Coastline defendants, conspired with Molina to defeat the de la Cerra parties' ownership and/or security interest in the York Boulevard property. To this end, Molina forged the de la Cerras' signatures on documents entitled "Substitution of Trustee and Deed of Full Reconveyance." The documents purported to reconvey to Molina the 1996 and the 2003 deeds of trust held by the de la Cerra parties[1] as if Molina's debt obligation had been fully repaid. The fraudulent documents were notarized by Kawasawa; and the purported reconveyance promptly recorded, superseding the prior recorded 1996 deed of trust. Thereafter, with their status as a first lien holder assured, the Coastline defendants loaned Molina $450,000, secured by a first deed of trust on the York Boulevard Property.

In their operative third amended complaint, the de la Cerra parties sought to quiet title to the York Boulevard property based on the 1998 quitclaim deed. Alternatively, they sought declaratory relief concerning their security interests under the two deeds of trust. In addition, the de la Cerra parties sought damages for fraud and conspiracy to defraud, forgery, negligence (against First American, Karla Severance, and North American only), breach of contract (against Molina only), intentional infliction of emotional distress, unfair or unlawful trade practices (Bus. & Prof. Code, § 17200) and elder abuse (Welf. & Inst. Code, § 15600 et seq.).

---

[1] By this time, the de la Cerras had created their trust entities and transferred their property interests to the trusts.

4

The Coastline defendants filed a first amended cross-complaint in February 2009 asserting equitable quiet title and declaratory relief claims against the de la Cerra parties. They also included in that action a cross-claim for negligence against Kawasawa and Merchants Bonding Company and cross-claims for fraud against Molina, Moreno and Kawasawa, among others.

b. *The bifurcated trial on the operative third amended complaint*

The de la Cerra parties requested a jury trial. On March 25, 2010 the Coastline defendants moved to bifurcate the trial to allow the court to decide the equitable claims first. They argued, if the court ruled the de la Cerras had no property interest in the York Boulevard property, either by virtue of the 1998 quitclaim deed or by any deed of trust to secure a loan, the remaining claims and cross-claims, premised on the de la Cerra parties' purported property interests, would necessarily fail as a matter of law. The court granted the bifurcation motion over the de la Cerra parties' objection and held a court trial to decide solely the equitable claims, leaving the fraud and related claims to be decided in the second phase, if one was necessary.[2]

After a streamlined bench trial the court quieted title to the property in Molina, finding Fred de la Cerra's unclean hands precluded the de la Cerra parties' recovery on a quiet title claim in a court of equity.[3] In a detailed statement of decision, the court found

[2]    Throughout the trial on the equitable claims, the court made clear it was not considering any of the fraud-related claims. In fact, the court specifically excluded any evidence of the alleged forged reconveyance of the de la Cerra parties' deeds of trust, stating "[t]hat's not for this phase. The Court is focused on that [the 1998] quitclaim deed and all the testimony surrounding it. That is my focus. . . . This other one [the 2007 reconveyance of the deeds of trust]: I'm not taking it into consideration at this point."

[3]    The trial court found that, to the extent Molina ever knowingly and voluntarily executed a quitclaim deed in 1998 purporting to deed the property back to the de la Cerras, Fred de la Cerra had deliberately failed to record the quitclaim deed to protect himself from lawsuits. The court stated, "It is manifest that plaintiffs have not done equity. Plaintiffs cannot now seek equity, therefore, because of their own unclean hands." A detailed discussion of the evidence presented at trial and the trial court's ruling can be found in *de la Cerra I, supra,* B231088.

5

Molina owned the property by virtue of her purchase in 1997. It also found that, while the de la Cerras' contract with Molina had been secured by a then-recorded 1996 deed of trust,[4] Molina had fully performed under her loan agreement and had paid her debt in full, in effect extinguishing the de la Cerra parties' 1996 lien. The trial court entered judgment in favor of the Coastline defendants, Merchants Bonding Company, Kawasawa and Moreno, concluding the de la Cerra parties' remaining legal claims against each of them, as well as the Coastline defendants' cross-claims for fraud and negligence, failed as a matter of law and/or were otherwise moot since the de la Cerra parties had no interest in the York Boulevard property at the time the 1996 deed of trust was allegedly fraudulently reconveyed. The de la Cerra parties appealed.

        c. *The first appeal*

On appeal the de la Cerra parties primarily argued the trial court had erroneously and prejudicially excluded evidence relevant to their quiet title claim, namely, a conversation between Molina and Fred de la Cerra, secretly recorded by Fred de la Cerra, in which Molina acknowledged he owned the property. In addition, they argued the question whether Molina had fully performed under her loan agreement with the de la Cerras and thereby extinguished their lien was a legal, not equitable, question that should have been presented to a jury in accordance with their request for jury trial. We agreed on this latter point and reversed the judgment. Our disposition in *de la Cerra I,* filed December 14, 2011, reads: "The judgment is reversed. The matter is remanded to the trial court to conduct a jury trial on the question whether and to what extent Molina fully performed under her contract with de la Cerra and to conduct any further proceedings not inconsistent with this opinion. In all other respects the judgment, including the court's finding Molina is the legal and equitable owner of the York Boulevard property subject to the de la Cerra parties' recorded 1996 deed of trust is affirmed." (*de la Cerra I, supra,* B231088.)

---

4     The court found the 2003 deed of trust invalid based on undisputed evidence the loan it purported to secure was never funded.

d. *The motion for leave to file a fourth amended complaint*

Following issuance of our remittitur in *de la Cerra I,* the de la Cerra parties moved for leave to file a fourth amended complaint based on the following new allegations: During the pendency of the appeal in *de la Cerra I*, Molina defaulted on her Coastline loan. In March 2011 Coastline foreclosed on its lien and acquired the York Boulevard property for $200,000 in a trustee sale as trustee for its beneficiary, Mike Targon. At that time, a lis pendens against the property, recorded in November 2007, provided constructive notice of the lawsuit. On April 27, 2011, following a noticed motion and hearing, the trial court granted the Coastline defendants' motion to expunge the lis pendens. The de la Cerra parties' petition for writ of mandate to this court to vacate the expungement order was summarily denied on May 19, 2011.[5] The Coastline defendants recorded the trial court's expungement order on May 23, 2011. Nearly one year later, on March 15, 2012 Targon sold the York Boulevard property to a third party, IPA on York, LLC, for $675,000, without satisfying the de la Cerra parties' purported 1996 lien.

Based on Targon's sale of the York Boulevard property in March 2012, the de la Cerra parties sought to amend their complaint to add Targon as a named defendant in the quiet title/fraud action and include new claims against him and against existing defendant First American Title Insurance Company for conversion, trespass, intentional interference with contract, intentional interference with prospective economic advantage, negligence and unjust enrichment, alleging as to all claims the sale to a third party was "wrongful" because it effectively eviscerated their security interest. In support of their motion they included official copies of the transfer deeds filed with the Los Angeles County Recorder's Office showing Targon's acquisition and sale of the property. They argued there was no prejudice in granting the amendment because no trial date had been

---

[5]     Unlike their appeal in *de la Cerra I* the de la Cerra parties' petition for writ of mandate to vacate the expungement order and supporting memorandum of points and authorities focused almost exclusively on the trial court's findings and rulings relating to the 1998 quitclaim deed and did not meaningfully address the right-to-jury trial on the breach of contract claim, a contract secured by the 1996 deed of trust.

set and our reversal of the judgment in *de la Cerra I* had reopened discovery in the action.

On July 11, 2012 the trial court denied the motion for leave to amend.[6] The court expressly found our remittitur in *de la Cerra I* had deprived it of jurisdiction to consider anything other than the de la Cerra parties' breach of contract action against Molina.

e. *The Coastline defendants' motion for summary judgment*

In November 2012 the Coastline defendants moved for summary judgment, arguing our decision in *de la Cerra I* left only the narrow issue of Molina's performance under her loan agreement with the de la Cerras to be decided. As a result, they argued, the court lacked jurisdiction to consider any other matter on remand. The de la Cerra parties opposed the motion, arguing the reversal of the judgment in *de la Cerra I* had effectively revived their fraud and related tort claims against the Coastline defendants, Kawasawa, Merchants Bonding Company, Moreno and Molina, since those claims, which had not been tried in the first phase of the trial, had only been dismissed because of the court's improper finding Molina had fully performed under her loan agreement. The trial court, persuaded by the Coastline defendant's interpretation of our disposition and instructions on remand, granted the motion and on February 26, 2013 entered an order dismissing the Coastline defendants.

Following the court's summary judgment ruling, the de la Cerra parties, on the one hand, and Kawasawa, Merchants Bonding Company and Moreno, on the other hand, stipulated, based on that ruling, the de la Cerra parties could not state a claim against Kawasawa, Merchants Bonding Company or Moreno. On March 20, 2013 the court granted a nonsuit and entered an order dismissing Kawasawa, Merchants Bonding Company and Moreno. The cross-claims filed by the Coastline defendants, which were all in the nature of demands for indemnity (if there was fraud, someone else was

---

6    Following our reversal of the judgment in *de la Cerra I,* the de la Cerra parties successfully moved to disqualify the original trial judge (Hon. Teresa Sanchez-Gordon) under Code of Civil Procedure section 170.6. The matter was reassigned to Judge Michael L. Stern.

8

responsible), were impliedly dismissed as part of the court's comprehensive determination only the breach of contract claim by the de la Cerra parties against Molina remained in the lawsuit.[7]

f. *The court trial on the breach of contract claim against Molina*

The de la Cerra parties' cause of action for breach of contract was scheduled for a jury trial on March 20, 2013. Molina did not appear. Accordingly, the de la Cerra parties withdrew their request for a jury trial and conducted a prove-up hearing to the court. The Coastline defendants, Kawasawa, Merchants Bonding Company and Moreno appeared at the hearing but did not present any evidence. The court found Molina liable to the de la Cerra parties in the amount of $508,873.97 for her breach of the loan agreement.[8] The court rejected the de la Cerra parties' request to include in that judgment a declaration that the amount owed was secured by the 1996 deed of trust on the property. The de la Cerra parties have separately appealed from that judgment.

2. *The Conversion/Unjust Enrichment Lawsuit*

In August 2012 the de la Cerra parties filed a new action (BC484940) against Targon and First American Title Insurance Company, alleging the same conversion, unjust enrichment and related tort claims they had unsuccessfully sought to include by amendment to the quiet title/fraud action. Targon and First American demurred, arguing: (1) The new action was barred by the doctrine of res judicata; (2) the new action was premised on facts found adversely to the de la Cerra parties in the prior action and thus barred by the doctrine of collateral estoppel; and (3) the complaint failed to state a cause of action because the sale was covered by the statutory protections for transfer of property following the expungement of a lis pendens. The trial court agreed as to each

---

[7] In the original judgment that we reviewed in *de la Cerra I*, the trial court had dismissed the cross-claims as moot.

[8] Later, the court awarded the de la Cerra parties $27,155.05 in costs and $145,834.66 in attorney fees plus interest.

9

ground, sustained the demurrer without leave to amend and entered an order of dismissal of the action on February 26, 2013.

## DISCUSSION

### *Pretrial Motions in Quiet Title/Fraud Action*

1. *The Trial Court's Orders Granting Summary Judgment and Nonsuit Were Based on a Misconstruction of Our Decision in de la Cerra I*

"A reviewing court has authority to 'affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had.' (Code Civ. Proc., § 43.) The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned. 'The order of the appellate court as stated in the remittitur "is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void."'" (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688 701; accord, *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5 ["the terms of the remittitur define the trial court's jurisdiction to act"; action that does not conform to those directions is unauthorized and void]; *Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655.)

Whether the trial court has correctly interpreted our opinion is an issue of law subject to de novo review. (*Ayyad v. Sprint Spectrum L.P.* (2012) 210 Cal.App.4th 851, 859; *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 674; see *Leese v. Clark* (1865) 28 Cal. 26, 36 [whether judgment of lower court was entered in accordance with Supreme Court's mandate was question of law, not fact].)[9]

---

[9]    Because the trial court's summary judgment and nonsuit orders were based entirely on its interpretation of our remittitur in *de la Cerra I,* we are concerned only with the propriety of that interpretation. Accordingly, we need not address or apply the standards of review ordinarily applicable to summary judgments and nonsuits.

The trial court granted summary judgment for the Coastline defendants and a nonsuit in favor of Kawasawa, Merchants Bonding Company and Moreno based on its understanding our remittitur in *de la Cerra I* limited its jurisdiction on remand solely to consideration of the de la Cerra parties' breach of contract claim against Molina. This interpretation of our decision and instructions on remand, made at the urging of the Coastline defendants, was incorrect.[10]

In *de la Cerra I* we reversed the judgment on the ground the trial court acted in excess of its equity jurisdiction in phase one of the trial when it determined Molina had fully performed under her loan agreement and thereby extinguished the de la Cerra parties' rights under the 1996 deed of trust. We remanded for a jury trial on that question and for the court "to conduct any further proceedings not inconsistent with this opinion." (*de la Cerra I,* at [p. 20].) While not expressly stated, the necessary effect of our reversal of the judgment, and specifically our reversal of the court's finding the deed of trust had been extinguished, was to revive the fraud and related legal claims, which were premised on the lien interest and which had been dismissed only as a result of the court's finding Molina's performance had effectively extinguished that interest. (See *McVeigh v. Recology San Francisco* (2013) 213 Cal.App.4th 443, 472, fn. 9 [reversal of summary judgment on *Tameny* claims effectively revived whistleblower cause of action under Lab. Code, § 1102.5, subd. (b)]; see also *Ayyad v. Spring Spectrum, L.P., supra,* 210 Cal.App.4th at p. 859 ["[w]hen, as in this case, the reviewing court remands the matter for further proceedings, its directions must be read in conjunction with the opinion as a whole"]; *Puritan Leasing Co. v. Superior Court* (1977) 76 Cal.App.3d 140, 143 [when remittitur incorporates by reference directions contained in the body of the opinion, "the trial court . . . is bound by the incorporated portions as if they were included as an express specific direction on remand"]; *Jurisdiction—State Courts—Modification of*

---

10    In making the ruling, the trial judge recognized, as do we, that his late entry into these fairly complex proceedings made a determination of the status of the legal claims that had not been tried in phase one of the bench trial all the more difficult.

11

*Former Opinion and Reinstatement of Judgment After Reversal by Supreme Court* (1936) 49 Harv. L.Rev. 838, 838-839 ["[r]emand of a cause . . .'for further proceedings not inconsistent with this opinion' revests the [lower court] with jurisdiction to pass upon issues which were not decided when the case was formerly before it"].)[11]

The Coastline defendants contend summary judgment was nonetheless proper because the de la Cerra parties' fraud claims are moot: "There is no actual controversy because [the de la Cerra parties] have no lien rights in or to the Subject property now that it has been sold to a bona fide purchaser as a matter of law." Assuming the accuracy of the premise—that the de la Cerra parties lost an otherwise valid lien by virtue of Targon's lawful sale of the York Boulevard property to a third party in 2012 (see Code Civ. Proc., §§ 405.60, 405.61 and discussion at pp. 12-16, below)—the fraud and related tort claims seek money damages for a fraudulent reconveyance of their deed of trust in 2007, actions that permitted the property to be sold in 2012 unencumbered by the 1996 lien. Far from mooting the fraud claims, the loss of the lien only reinforces the legal claims for damages premised on the allegedly fraudulent reconveyance.

Similarly without merit is the Coastline defendants' contention the de la Cerra parties have forfeited or abandoned their claims relating to the fraudulent reconveyance by not raising them in *de la Cerra I*. While the primary focus of their appellate brief in *de la Cerra I* was the validity of the 1998 quitclaim deed and the prejudicial effect of the

---

[11]    Quite properly, the Coastline defendants, Kawasawa, Merchant Bonding Company and Moreno do not argue our judgment in *de la Cerra I* constituted law of the case as to the fraud-related claims. (See *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366 [the scope of the remittitur can overlap, and sometimes be confused with, the doctrine of law of the case].) The law-of-the-case effect of a reviewing court's opinion is necessarily limited to those issues actually tried in the trial court. (*Bovard v. American Horse Enterprises, Inc.* (1988) 201 Cal.App.3d 832, 842 ["in order for [a previous appellate decision] to have become law of the case, 'it must have been a decision on appeal upon the identical issues tried before the court below'"]; see generally *People v. Barragan* (2004) 32 Cal.4th 236, 246 ["when an appellate court '"states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal"'"].)

exclusion of the surreptitiously recorded conversation, the de la Cerra parties also argued the trial court had improperly "disposed of all of their legal causes of action because it ruled they had retained no rights in the Property, and did so without allowing a jury trial." This finding in excess of the court's equity jurisdiction, they argued, affected "all of [their] legal causes of action"; and they urged this court to reverse the finding so they could proceed with their legal claims. We did so, effectively reviving all of the legal causes of action. Any other interpretation of our opinion or remittitur in *de la Cerra I* or of the de la Cerra parties' arguments in that first appeal is simply mistaken.[12]

We also reject Kawasawa and Merchants Bonding Company's argument the trial court's original order finding no surviving property interest arising from the 1996 deed of trust can be affirmed on the ground the promissory note itself was not introduced into evidence at the trial on the equitable issues. (See generally *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1235 ["[a] security interest cannot exist without an underlying obligation"]; 4 Miller & Starr, Cal. Real Estate (3d. ed. 2013) § 10:11, pp. 10-57 to 10-58, fns. omitted [the deed of trust is "merely incident to and measured by the performance of the obligation [and] there can be no lien of a mortgage or trust deed without an underlying and enforceable debt or obligation"].) The de la Cerra parties contend the argument misstates the record because the loan modification agreement, incorporating the obligations of the promissory note, was introduced into evidence at that trial. We need not revisit these issues, however; the time to raise an alternative basis for upholding the trial court's 2010 judgment was in *de la Cerra I*. Our review at this juncture is limited to the summary judgment and nonsuit following our remittitur in the prior appeal.

---

[12]    To the extent the Coastline defendants contend the trial court necessarily found Fred de la Cerra's unclean hands barred not only his ownership claim but also his claim to the property based on the 1996 deed of trust, we necessarily rejected that characterization of the record in the first appeal. (See *de la Cerra I, supra,* at [pp. 10-11, 16].)

13

To avoid any further misunderstanding, we make explicit the effect of our holding:[13] Our reversal of the summary judgment and the order of nonsuit that relied on it revives the de la Cerra parties' damage claims against the Coastline defendants, Kawasawa, Merchants Bonding Company and Moreno since all those claims, premised on the allegedly fraudulent reconveyance, were dismissed solely on the basis of the trial court's premature, and ultimately erroneous, finding Molina had fully performed under her loan agreement. However, contrary to the de la Cerra parties' suggestion, the revival of those claims does not necessarily mean they are legally sufficient and entitled to be tried to a jury. It has not been argued in the trial court, and thus we do not address, whether those claims are subject to dismissal on summary judgment or in some other pretrial proceeding based on reasons unrelated to the effect of our decision and the remittitur in *de la Cerra I*.[14]

2. *The Trial Court's Denial of Leave To File a Fourth Amended Complaint Was Not Error Because the Amendment Would Have Been Futile*

a. *Governing law and standard of review*

The trial court is vested with the discretion to permit a party to amend a pleading at any time in furtherance of justice. (See Code Civ. Proc., § 473, subd. (a)(1) ["court may likewise, in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars"]; Code Civ. Proc, § 576 ["[a]ny judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment

---

[13] In doing here what we failed to do in *de la Cerra I,* we are mindful of the observation frequently attributed to George Bernard Shaw: "Success does not consist in never making mistakes but in not making the same one a second time."

[14] It would stand to reason that our reversal would have also revived the Coastline defendants' indemnity-based cross-claims, which were similarly dismissed as moot after the court found the de la Cerra parties lacked any security interest in the York Boulevard property at the time the allegedly fraudulent reconveyance of the 1996 deed of trust occurred. However, the Coastline parties have not addressed the cross-claims in their appellate briefs or even at oral argument despite our invitation to do so. We consider those claims to be abandoned.

14

of any pleading or pretrial conference order"].) Public policy weighs in favor of allowing amendments absent prejudice to the opposing party. (*Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1163; *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761; see *Douglas v. Superior Court* (1989) 215 Cal.App.3d 155, 158 ["'California courts have "a policy of great liberality in allowing amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others'"].)

The decision whether to grant leave to amend is "entrusted to the sound discretion of the trial court." (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242; accord, *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296.) It is not an abuse of discretion to deny leave to amend when the newly proposed causes of action are legally insufficient and the amendment, therefore, futile. (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230-231 ["[o]f course, if the proposed amendment fails to state a cause of action, it is proper to deny leave to amend"]; *Yee v. Mobilehome Park Rental Review Bd.* (1998) 62 Cal.App.4th 1409, 1428-1429.)

b. *The amendment was futile because the sale of the property following expungement of the lis pendens was not wrongful*

The trial court denied the de la Cerra parties' request for leave to amend on the ground our remittitur precluded further proceedings on any cause of action other than the breach of contract action against Molina. (See *Griset v. Fair Political Practices Com., supra,* 25 Cal.4th at p. 701 [on remand lower court is confined to scope of remittitur and is precluded from permitting amendments to pleadings or filing of supplemental pleadings outside the scope of remittitur].) For the reasons we explained, this was error. Nonetheless, denial of leave to amend was proper because the proposed amendment did not allege an unlawful transfer of property.

The recording of a lis pendens, also called a notice of pendency of action, protects a party's claimed interest in real property until a lawsuit involving the property is

15

resolved or until the lis pendens is expunged. (See Code Civ. Proc., § 405.24;[15] *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 523; *Cyr v. McGovran* (2012) 206 Cal.App.4th 645, 652 ["'[a] [recorded] lis pendens provides constructive notice of the litigation, such that any judgment later obtained in the action relates back to the filing of the lis pendens'"].)

Once a lis pendens is expunged, however, and the expungement order is recorded, a nonparty to the action may purchase the property free and clear of any lien subsequently found to exist in the action, irrespective of whether that person possessed constructive or even actual knowledge of the action. (Code Civ. Proc., §§ 405.60, 405.61; see § 405.61 ["[i]t is the intent of the Legislature that this section shall provide for the absolute and complete free transferability of real property after the expungement or withdrawal of a notice of pendency of action"]; *Knapp Development & Design v. Pal-Mal Properties, LTD* (1987) 195 Cal.App.3d 786, 791; see also *Mix v. Superior Court* (2004) 124 Cal.App.4th 987, 993 [the recording of the expungement order "restores the full bundle of rights otherwise available to the prevailing property owner, including the ability to freely transfer the property"].)

Emphasizing the effect of the sale to a third party was to eviscerate their unrecorded 1996 lien, the de la Cerra parties contend they adequately alleged the sale of the property was wrongful. Specifically, they allege as the basis for their causes of action for conversion, trespass to chattel, negligent and intentional interference with contract and with prospective economic advantage that Targon and First American, which allegedly acted as title insurer and/or escrow company for Targon's sale, had actual and

---

[15] Code of Civil Procedure section 405.24 provides, "From the time of recording the notice of pendency of action, a purchaser, encumbrancer, or other transferee of the real property described in the notice shall be deemed to have constructive notice of the pendency of the noticed action as it relates to the real property and only of its pendency against parties not fictitiously named. The rights and interest of the claimant in the property, as ultimately determined in the pending noticed action, shall relate back to the date of the recording of the notice."

constructive knowledge of the unrecorded 1996 lien and wrongfully intended to deprive the de la Cerra parties of their security interest by selling the property to a third party.

Contrary to the de la Cerra parties' contention, nothing precluded Targon, who was the undisputed owner of the property following the trustee's sale, from selling it. The question is simply the effect, if any, of that sale on the de la Cerra parties' now-unrecorded 1996 lien. To be sure, under statutory protections concerning lis pendens and its expungement, the expungement order, once entered, permitted the third party purchaser to obtain the property free and clear of any judgment later obtained in this action. However, Targon was under no duty to the de la Cerra parties to refrain from selling the property; and the effect of the sale on the unrecorded lien following expungement of the lis pendens does not, alone, make the transfer wrongful. (See *Mix v. Superior Court, supra,* 124 Cal.App.4th at pp. 993-994, 997) [recognizing that expungement of lis pendens pending appeal may result in transfer of property to third party and appellant's resulting loss of property interest, despite the success of appellant's arguments on appeal].) [16]

Our decision in *GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, on which the de la Cerra parties rely, does not compel a different result. In *GHK* the owner of real property (GHK) entered into a development agreement with the defendants. Under the terms of the agreement GHK agreed to transfer a two-acre parcel of unimproved property to defendant corporate developers, which promised to develop and market the property as an 80-unit residential condominium project. In exchange, GHK would receive 40 percent of the net profits of the project. Later, GHK sued the

---

[16] The de la Cerra parties insist they did everything they could to preserve their lien pending the outcome of this lawsuit: They filed a lis pendens when they initiated the lawsuit; they opposed the Coastline parties request for expungement of the lis pendens; and, when those efforts failed, they filed a petition for writ of mandate to vacate the trial court's expungement order. They also emphasize the trial court's view of the case was such that any effort to request leave to file a new lis pendens would have been futile. Diligence by the lienholder, however, does not permit recovery of damages from a property owner whose actions were not unlawful.

17

developers for breach of the development agreement, contending the developers violated the agreement by transferring and encumbering the property without its consent and constructing an apartment project without paying any of the profits to GHK. In the same action, GHK sued, among others, PBL, one of the entities to which the developers transferred part of the property, alleging PBL knowingly and unlawfully interfered in their development contract. Following a court trial, the court ruled in GHK's favor on the breach of contract claim and tortious interference claim and imposed a constructive trust on profits received by both the developers and PBL in connection with the project. (*Id.* at pp. 869-872.)

On appeal PBL contended the constructive trust was improper. Among other things, PBL argued the expungement of a lis pendens that GHK had recorded on September 26, 1983 permitted the developers to later transfer the property to PBL. We found the fact of the lis pendens and its subsequent expungement wholly irrelevant to the breach of contract and tortious interference action. GHK's action against the developers and PBL, we explained, was not rooted in the sale of the property per se, but in the developers' breach of GHK's contractual right to profits and in PBL's conscious interference with those contractual rights. We held under those circumstances it was appropriate to impose a constructive trust on profits PBL received by virtue of its tortious interference with GHK's rights under the development agreement. (*GHK Associates v. Mayer Group, Inc., supra,* 224 Cal.App.3d at pp. 879-880.)

Here, in contrast, Targon did not owe, and thus did not violate, any contractual or legal duty to the de la Cerra parties. Certainly, as the de la Cerra parties assert, the effect of the sale to a third party purchaser was to permit IPA on York to purchase the property unencumbered by any unrecorded lien subsequently found to exist in this quiet title/fraud action. (See Code Civ. Proc., §§ 405.60, 405.61; *Mix v. Superior Court, supra,* 124 Cal.App.4th at p. 994.) Although the sale thus interfered with the de la Cerra parties' anticipated legal recognition of its unrecorded lien by virtue of this lawsuit, to be actionable, the "interference" with their anticipated security interest must also constitute independently wrongful conduct. (See *Edwards v. Arthur Andersen LLP* (2008)

18

44 Cal.4th 937, 944 [to state a claim for intentional interference with prospective economic advantage, plaintiff must plead and prove "the interference was wrongful, independent of its interfering character"]; accord, *Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393.)  The extinguishment of an unrecorded lien by operation of law is a far cry from an independent tort.

The de la Cerra parties argue they have alleged more than interference with an anticipated economic interest in the outcome of a lawsuit for which specific wrongful conduct is a prerequisite; they contend they have properly alleged the sale interfered with their existing secured contract.  According to the de la Cerra parties, the language in *de la Cerra I* stating Molina was the legal and equitable owner of the property subject to the recorded 1996 deed of trust necessarily meant we had found the 1996 deed of trust valid despite the 2007 reconveyance, thereby accepting their argument that purported reconveyance was fraudulent.  Because Targon knew, by virtue of our opinion in *de la Cerra I,* the 2007 reconveyance was unlawful, his sale of the property necessarily interfered with the de la Cerra parties' existing secured contract.  However, as the de la Cerra parties themselves recognized, the question whether the 2007 reconveyance of the 1996 deed of trust was fraudulent was not litigated in the first (equitable) phase of the trial.  The trial court found the recorded 1996 deed of trust valid at its inception, but extinguished.  We affirmed the finding the 1996 deed of trust was valid at the time the contract was formed and remanded for further proceedings, not only as to whether Molina's performance had extinguished the de la Cerra's property interest but also whether that property interest was lawfully superseded by the recorded 2007 reconveyance.  The continued viability of the unrecorded 1996 deed of trust thus remained in dispute at the time Targon sold the property.  As explained, Targon's knowledge of the dispute is irrelevant.  Once the lis pendens was expunged, Targon was free to sell the property unencumbered by the effect of any subsequent judgment.

The de la Cerra parties' assertion they at least have stated a claim for unjust enrichment in accordance with the principles articulated in *First Nationwide Savings v.*

19

*Perry* (1992) 11 Cal.App.4th 1657 is also without merit.[17]  In that case First Nationwide

Savings (FNS) loaned $146,000 to Gary Madden secured by a deed of trust on real

property Madden owned.  Later, Madden sold the property, which the purchaser acquired

subject to FNS's deed of trust.  That purchaser then encumbered the property with a

second deed of trust.  The junior lien holder ultimately foreclosed, and Sunrise Trust

purchased the property at a trustee's sale on behalf of its principal, David Perry, subject

to FNS's first deed of trust.  A few months after the sale, the trustee on the FNS's deed of

trust mistakenly executed and recorded a  reconveyance of the FNS's deed of trust.  The

trustee on FNS's deed of trust was not authorized to execute the reconveyance and did

not intend to do so.  Sunrise then sold the property to a third party purchaser for full

value, without satisfying FNS's first lien.  (*Id.* at pp. 1661-1662.)  FNS sued Sunrise for

unjust enrichment.

     The Court of Appeal, reversing an order sustaining Sunrise's demurrer to the

complaint without leave to amend, held FNS could state a claim for unjust enrichment

against Sunrise provided Sunrise knew of the mistaken reconveyance of the first deed of

trust.  The court explained "under restitution law, Sunrise's knowledge . . . is an

important consideration in determining the validity of FNS's unjust enrichment claim."

(*First Nationwide Savings v. Perry, supra,* 11 Cal.App.4th at p. 1664.)  "If Sunrise should

not have known about the reconveyance, and should not have realized that it was not

---

[17]     The elements for a claim of unjust enrichment are "receipt of a benefit and unjust
retention of the benefit at the expense of another." (*Lectrodryer v. SeoulBank* (2000)
77 Cal.App.4th 723, 726; accord, *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014)
223 Cal.App.4th 1105.)  "'The theory of unjust enrichment requires one who acquires a
benefit which may not just be retained, to return either the thing or its equivalent to the
aggrieved party so as not to be unjustly enriched.' [Citation.]  It is not, strictly speaking,
a theory of recovery, '"but an effect:  the result of a failure to make restitution under
circumstances where it is equitable to do so."'" (*Prakashpalan,* at p. 1132; accord,
*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793.)  Ordinarily,
restitution is required only when the benefits were conferred by mistake, fraud, coercion
or request. (*Prakashpalan,* at p. 1132; *Nibbi Brothers, Inc. v. Home Federal Savings &
Loan Assn.* (1998) 205 Cal.App.3d 1415, 1422.)

entitled to all of the sale proceeds, then it would not necessarily be unjust to permit it to retain those proceeds. On the other hand, if Sunrise did know that it was not entitled to all of the sale proceeds, then it is fair to require that Sunrise make restitution." (*Id.* at p. 1669.)

The de la Cerra parties suggest that, under *First Nationwide Savings,* they have stated a claim for unjust enrichment against Targon for the value of their unrecorded lien, since Targon acquired the property at a trustee sale with constructive notice of the lawsuit. To be apt, the analogy requires that Targon knew the 1996 deed of trust had been fraudulently reconveyed. However, there is no allegation, in any of the complaints or in the arguments made on appeal, that Targon was part of the fraud. At most, it is alleged that Targon knew at the time he acquired the property there was a recorded lis pendens signaling *a dispute* over the continued existence of the unrecorded 1996 lien. In fact, it was this cloud on title that enabled him to purchase the property at a substantial discount. Once the lis pendens was expunged and the cloud on title removed, Targon, like any other shrewd investor, was able to sell the property to a nonparty at full value. In effect, the expungement transformed Targon from a transferee with notice of the lawsuit, to the functional equivalent of a bona fide purchaser, enabling him to obtain and to transfer title unencumbered by any subsequent judgment in the underlying action. (Code Civ. Proc., § 405.61; see *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1871 [effect of withdrawal or expungement of lis pendens means transferee who took subject to constructive notice provided by lis pendens now becomes bona fide purchaser retroactively and free to transfer clear title to nonparty transferee; "[t]his result functionally makes the Lewises bona fide purchasers retroactively, since otherwise they could not transfer clear title"].) Under these circumstances, it is not unjust for Targon to retain the profits generated by the sale following the expungement of the lis pendens.

In sum, the loss of the unrecorded lien certainly reinforces the de la Cerra parties' claim for damages in connection with the allegedly fraudulent reconveyance of their 1996 deed of trust; but absent any allegation Targon was involved in that tortious conduct, there is no basis for a claim against him. Because the purported amendments could not

21

state a cause of action against Targon for selling the property, or against First American for participating in the lawful sale as escrow agent or title insurer, the purported amendment would have been futile.[18] Accordingly, while the court's reason for denying leave to amend was erroneous, the error was harmless.

### *The Demurrer to the Separate Conversion and Unjust Enrichment Action*

Generally, on appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415; *Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We may also consider matters that have been judicially noticed. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; see *Serrano v. Priest* (1971) 5 Cal.3d 584, 591.) We give the complaint a reasonable interpretation, "treat[ing] the demurrer as admitting all material facts properly pleaded," but do not "assume the truth of contentions, deductions or conclusions of law." (*Aubry*, at p. 967; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; see *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20 [demurrer tests sufficiency of complaint based on facts included in the complaint, those subject to judicial notice and those conceded by plaintiffs].) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452*; Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

The de la Cerra parties devote much of their appellate briefs on this issue to addressing whether the trial court erred in sustaining the demurrer on res judicata and collateral estoppel grounds, arguing the new complaint was based on post-judgment facts—the foreclosure on and sale of the York Boulevard property to a third party—that were neither litigated nor decided in the quiet title/fraud action. We need not address

---

[18]    To the extent First American participated in the fraud, those damages are covered by the fraudulent reconveyance and conspiracy claims stated against them in the quiet title/fraud action.

22

these arguments because, even assuming they have merit, for the reasons we explained in section 2b, above, concerning the futility of amending the original complaint to plead these claims against Targon and First American in its capacity as agent and/or title insurer, the demurrer to the new complaint asserting those claims was properly sustained on the ground it failed to state, and could not be amended to state, a cause of action as a matter of law.

*Trial on the Breach of Contract Claim*

The de la Cerra parties prevailed on their breach of contract claim against Molina, proving she did not fully perform under her loan agreement. The court awarded the de la Cerra parties $508,873.97 plus interest, costs and attorney fees. Molina, who did not appear for trial, has not appealed that judgment. The de la Cerra parties have, insisting the trial court erred in denying their request for declaratory relief stating the amount awarded under the contract remained secured by an existing and valid lien on the York Boulevard property.[19]

The trial court did not err in denying the de la Cerra parties' request for a declaration the property, now owned by a third party, remains subject to an existing and valid lien. Whatever merit there may have been to their declaratory relief claim when they originally filed the lawsuit, the evidence is undisputed that, by the time of trial on the breach of contract claim, the property had been sold to a third party free and clear of the lien. As the de la Cerra parties themselves recognized both in their proposed fourth amended complaint and in their new complaint, their unrecorded lien was lost by operation of law upon the property's sale to a nonparty purchaser. Although this lost

---

[19] The Coastline defendants, Merchant Bonding Company, Kawasawa and Moreno contend the de la Cerra parties lack standing to appeal the judgment because they prevailed on the breach of contract claim. But the de la Cerra parties are "aggrieved" by the court's denial of their claim for declaratory relief as to the continued validity of their unrecorded 1996 lien, relief that, at the time they filed their action, hinged upon a finding that Molina had failed to fully perform under her loan agreement. They specifically sought a declaration the lien remains valid so they "may foreclose and sell the property" to recover the proceeds of their judgment against Molina.

security interest reinforces the de la Cerra parties' claims for damages in connection with their fraudulent reconveyance claims, the request for declaratory relief was property denied.

## DISPOSITION

The orders of dismissal in Los Angeles Superior Court No. BC381249 are reversed. On remand the trial court is directed to vacate its order granting summary judgment in favor of the Coastline defendants and its order granting nonsuit to Kawasawa, Merchants Bonding Company and Moreno, to enter new orders denying those motions and to conduct further proceedings not inconsistent with this opinion. The de la Cerra parties may pursue their fraud and tort claims against the Coastline defendants, Kawasawa, Merchants Bonding Company and Moreno, subject to any defenses those parties may have unrelated to the scope and effect of our remittitur in *de la Cerra I.* The order of dismissal in Los Angeles Superior Court No. BC489490 is affirmed. The judgment against Molina in Los Angeles Superior Court No. BC381249 is affirmed. The parties are to bear their own costs on appeal.


PERLUSS, P. J.


We concur:


WOODS, J.


SEGAL, J.[*]

_____

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

24